IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| WILLIAM FRED GUNTER,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br>    Defendant. | §<br>§<br>§<br>§   CIVIL ACTION NO. 4:21-CV-783-BJ<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Fred Gunter ("Gunter") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Because the parties have consented to proceed before a magistrate judge, the undersigned has full authority under 28 U.S.C. § 636(c) to consider this appeal, including issuing a final judgment. For reasons stated herein, the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED**.

### I.   STATEMENT OF THE CASE

Gunter filed this action pursuant to Section 205(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security terminating his disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). On July 22, 2018, Gunter proactively applied for DIB and alleged that his disability began on December 1, 2017. (Transcript ("Tr.") 18.) Gunter's application was initially denied on January 8, 2019, and upon reconsideration on March 8, 2019. (Tr. at 101, 108.) Gunter filed a request for a hearing before an ALJ on April 26, 2019. (Tr. at 111.) On May 26, 2020, a hearing was held before the ALJ, and on September 25, 2020, the ALJ found that Gunter was not disabled within the meaning of the SSA. (Tr. at 18, 25.) On November 24, 2020, Gunter filed a written request for review of

the ALJ's decision to the Appeals Counsel, and on April 27, 2021, the Appeals Council issued an unfavorable decision. (Tr. at 1-5.) Gunter filed this civil action under 42 U.S.C. § 405(g), requesting judicial review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

2

the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

3

In his brief, Gunter presents a sole issue: Whether the ALJ erred at Step Four in finding that Gunter could perform his past relevant work as he actually performed it. (Plaintiff's Brief ("Pl.'s Br.") at 1.)

## II.   ALJ DECISION

In her September 25, 2020, decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 18-15.) The ALJ first noted that Gunter met the disability insured status requirements under Title II of the SSA through December 21, 2022. (Tr. at 20.) The ALJ then stated that Gunter had not engaged in substantial gainful activity since December 1, 2017, the alleged disability onset date. (Tr. at 20.) The ALJ further noted that Gunter had the following "severe" impairments: "lumbar degenerative disc disease with radiculopathy and cervical degenerative disc disease." (Tr. at 20 (emphasis omitted).) Next, the ALJ held that none of Gunter's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. at 21.) As to Gunter's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that claimant has the residual functional capacity to perform less than the full range of light work, defined in 20 CFR 404.1457(b) as(sic) the ability to lift, carry, push, and pull 20 pounds occasional and 10 pounds frequently, stand and/or walk 4 hours of an 8-hour day, and sit 6 hours of an 8-hour day. Claimant can occasionally climb ladders, ropes, and scaffolds, and can frequently climb ramps and stairs. Claimant can frequently balance, kneel, crouch, and crawl, but can only occasionally stoop.

(Tr. at 22 (emphasis omitted).) Next, at Step Four, the ALJ opined that Gunter is capable of performing past relevant work as a small business owner and paint sprayer, reasoning that this work does not require the performance of work-related activities precluded by Gunter's RFC. (Tr. at 24.) Consequently, the ALJ determined that Gunter was not disabled. (Tr. at 25.)

## V. DISCUSSION

### A. **Work as Actually Performed**

In his brief, Gunter argues that "[t]he ALJ failed to reconcile conflicting evidence that undermines her step-four determination that Gunter can perform past work as actually performed." (Pl.'s Br. at 6 (emphasis omitted).) This argument centers on a "significant inconsistency that required resolution under SSR 82-62." (Pl.'s Br. at 7 (emphasis omitted).)

Specifically, Gunter takes issue with the ALJ';s reasoning at Step Four, in which the ALJ stated:

> At the hearing, the vocational expert testified that the claimant has past relevant work as a composite job of small business owner [], and paint sprayer . . . this work is a composite job because it has significant elements of more than one DOT occupation. Thus, it cannot be evaluated as work generally performed in the national economy. However, in comparing the demands of this work as actually performed by claimant to claimant's residual functional capacity, claimant is able to perform it because although the DOPT states that the paint sprayer job is medium exertion, claimant stated in his Work History Report that he did not lift over 10 pounds in this job. Therefore, with the residual functional capacity set out above, claimant could still perform this work as he stated he performed it.

(Tr. at 24-5.)

Gunter does not dispute that, in his work history report, he indicated that he lifted less than 10 pounds at his work. (Tr. 209.) Accordingly, the State Agency Medical Consultant found that Gunter "could perform his past work [as an office manager and spray painter] because most of the labor was delegated to others." (Tr. at 8.) At the May 2020 hearing, however, in response to questioning by the VE, Gunter stated that he lifted over 50 pounds of equipment and described his position as 80 percent management and 20 percent "doing the work." (Tr. at 48.) Thus, according to Gunter, the ALJ's decision "sidesteps the inconsistency by ignoring Gunter's sworn testimony" in that "it removes the 20 percent without any explanation." (Pl.'s Br. at 9 (footnote omitted).) Gunter further states that the ALJ erred in failing to make a credibility determination as to Gunter's testimony. (*Id.* at 10.) Gunter was harmed by the ALJ's error, he argues, because "had the ALJ

5

properly eliminated Gunter's past work, the analysis would have proceeded to step five . . . [and] a finding of 'disabled.'" (*Id.* at 13.)

In response, the Commissioner states that any inconsistency was resolved when the ALJ rightly sought testimony from the VE. (Defendant's Response Brief ("Def.'s Br.") at 5.) Specifically, the Commissioner argues that the ALJ properly relied on the VE's testimony:

> [The VE] acknowledged that the paint sprayer job is generally performed at the medium exertional level, but given the facts of this case a hypothetical individual mirroring Plaintiff would remain able to perform the past jobs of small business owner and paint sprayer.

(*Id.*; citing (Tr. 62-64) (emphasis omitted).) The Commissioner also directs the Court to Gunter's burden of proof at Step Four, stating the work history report "was admitted into the record without dispute by Plaintiff's counsel." (Pl.'s Br. at 4.)

As stated, *supra*, after considering the record's entirety, the ALJ determined Gunter's RFC as follows:

> [C]laimant has the residual functional capacity to perform less than the full range of light work [] as(sic) the ability to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, and/or walk 4 hours of an 8-hour day, and sit 6 hours of an 8-hour day. Claimant can occasionally climb ladders, ropes, and scaffolds, and can frequently climb ramps and stairs. Claimant can frequently balance, kneel, crouch, and crawl, but can only occasionally stoop.

(Tr. at 22.) At the May 2020, hearing the VE gave the following relevant testimony:

> [ALJ]: All right. And, Ms. Kelly, with respect to past work, if you're able to classify that?
>
> [VE] Yes, Your Honor . . . I believe all factors considered, this would be a composite of two specific occupations, Your Honor. And one would be the small business owner, which is under Dictionary of Occupational Titles Number 185.167-016, which the DOT describes at the light exertional category, skill level of seven, L7.
> The other occupation would be the sprayer, paint sprayer, Roman Numeral I. I think that's about the closest that we're going to get to the technology that he's talking about. And the date of last update is 1989. One of our newest DOT numbers, 741.684-026, which the DOT describes at the medium exertional category and semi-skilled, M5, SVP 5.

6

By testimony, he was spraying about 20 percent of the time, and then the other part of the 80 percent of the time was visiting the property, confirming work schedule, estimating, bringing tools and supplies.

. . .

[ALJ]: So I will turn now to my hypothetical questions. And for each one of these, please assume an individual of the Claimant's age, education, and work history. Is the person someone who could do the following?

This individual can lift, carry, push, or pull up to 20 pounds occasionally and 10 frequently, stand or walk for six hours out of an eight-hour day. The individual can frequently climb ramps or stairs, as well as ladders, ropes, or scaffolds and can frequently balance, stoop, kneel, crouch, and crawl. For Hypothetical Person 1, those are the limitations.

Would any of Claimant's past work be available to this individual?

[VE]: It appears that the past relevant work could be performed, Your Honor.

[ALJ]: All right. And for the individual standing and walking could be performed for no more than four hours out of an eight-hour day. A couple of other changes as follows.

The individual can occasionally climb ramps and stairs. I'm sorry. Can occasionally climb ladders, ropes, or scaffolds and can occasionally stoop. The remainder of the past roles remain as they were at frequent.

Would that change? Would any of the Claimant's past work be available?

[VE]: I believe that the past-relevant work would still be available, Your Honor. In my—in my opinion, it would.

[ALJ]: Okay.

[VE]: Based on the managerial duties that they would have had to perform, I believe that it would still fit.

[ALJ]: All right. And then for Hypothetical 3, this will be someone at the sedentary level. This individual can carry, push, or pull up to 10 pounds occasionally and less than 10 frequently, stand or walk for two hours out of an eight-hour day, and sit for six hours out of an eight-hour day. This individual can occasionally climb ramps or stairs but no ladders, ropes, or scaffolds and can occasionally balance. There's no crouch and crawl.

> For Hypothetical Person 3, would any of Claimant's past work be available?
>
> [VE]: No, Your Honor.

(Tr. at 62-5.)

It is undisputed that Gunter's previous work was properly labeled a composite job. An ALJ must analyze a plaintiff's past relevant work, a composite job, "as actually performed" instead of "as generally performed in the national economy." *Deborah T. v. Saul*, No. 4:18-CV-00765-O-BP, 2019 WL 5025951 (N.D. Tex. Sept. 6, 2019) (finding the ALJ committed legal error at step four because he properly analyzed Plaintiff's composite job past previous work as "generally performed"), citing Program Operation as Manual System ("POMS") DI 25005.020(B), 2011 WL 453471 (requiring ALJs not to evaluate composite jobs as "generally performed in the economy"). When determining at Step Four whether the claimant could perform her composite job as past relevant work, the ALJ is permitted to consult a VE. *See, e.g., Adams v. Astrue*, No. 08-135, 2009 WL 774845, at *7 ("At Step Four of the sequential evaluation process, the ALJ employed a VE to find that [the claimant] was able to return to her past relevant work."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony."); *Holland v. Colvin*, No. 14-2964, 2015 WL 5437727, at *11 (N.D. Tex. Aug. 31, 2015.)

"The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d, 129, 132 (5th Cir. 1995). "Therefore, an ALJ may consult a VE to determine the proper characterization of the claimant's past work, and whether she can return to that past work as she actually performed it or whether she can perform the work as it is generally performed in the national economy." *Holland*, 2015 WL 5437727 at *11 (relying on *Semien v. Colvin*, No. 12-02179, 2013 WL 3778984l, at *6 (W.D. La. July 17, 2013.), SSR 82-61). Notably,

8

at Step Four, the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564.

Though Gunter does not agree with the weight the ALJ afforded the work history report over Gunter's own testimony, this Court finds the ALJ did not commit error. Gunter states that the ALJ "simply found Gunter's testimony not credible," and that her decision was "simply silent" regarding her reason for discrediting Gunter's testimony. (Pl.'s Br. at 10.) This is untrue, as the ALJ states that, in making her findings, she relied on the entire record, the VE's testimony, and the work history report. (Tr. 20, 24-5.) Next, although Gunter argues that the ALJ erred in weighing the work history report over Gunter's testimony, the work history report is *further* supported by the VE's testimony regarding the hypotheticals. *See, supra*. Moreover, Gunter does not provide the Court with any law that states *hearing testimony* is more valuable or to be given more deference than documents in the record. Correctly, Gunter cites to *Newton v. Apfel*, stating that "credibility determinations are typically afforded 'great deference' when supported by substantial evidence." 209 F.3d 448, 495. This Court finds the record does not contain substantial evidence that supports Gunter's testimony that he frequently lifted 50 pounds. (Tr. at 209; Tr. at 18-25.) Based on the foregoing, there is substantial evidence for which the ALJ could rely upon in making her determination at Step Four. Accordingly, the Court finds there was no error and remand is not necessary.

## CONCLUSION

The ALJ's decision is **AFFIRMED** in all respects.

SIGNED August 9, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/adh

9